UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
07-CA-10934 NG

*******************************************
CHRISTINA CHAO,                              *
                                             *
            Plaintiff,                       *
                                             *
v.                                           *
                                             *
MOISES BALISTA, KATHLEEN M.                  *
DENNEHEY, Commissioner of the Massachusetts  *   **THIRD AMENDED**
Department of Corrections, KELLEY RYAN,      *   **COMPLAINT**
Superintendent South Middlesex Correctional  *
Facility, RANDY AZZATO, Director of Security,*
South Middlesex Correctional Facility, CHRIS *
TORTORA, Training Officer, South Middlesex   *
Correctional Facility, et. al.               *
                                             *
            Defendants.                      *
*******************************************

## INTRODUCTION

Plaintiff Christina Chao ("Chao"), a mother of young children, is bringing this action because she was the victim of sexual relations with a prison guard and sexual battery at a time when she was an inmate at the South Middlesex Correctional Center ("SMCC"). She claims injuries she suffered there-from and for the violations of her civil rights as guaranteed by the United States Constitution and the Massachusetts Declaration of Rights. Chao sues for injuries arising from 50 to 100 sexual encounters with Defendant Moises Ballista ("Ballista") a former prison guard at the SMCC, while she was incarcerated and from actions taken by others during the investigation that followed the discovery of the sexual batteries. The sexual relationship extended over a year before Defendant Ballista was suspended from his position and later criminally charged. He ultimately pleaded guilty to multiple counts of sexual relations with an inmate. Chao brings suit against other prison officials as individuals for their direct and indirect

actions, their decisions and non-decisions, their failures to prevent the sexual assaults, and their maintenance of flawed policies all of which combined to create a culture within the SMCC that helped facilitate the sexual batteries.

## JURISDICTION

This Court has jurisdiction over the federal claims presented in this action pursuant to 28 U.S.C. §§1331 and 1343.   Plaintiffs' federal claims are made pursuant to 42 U.S.C. §1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

## PARTIES

1. Plaintiff, Christina Chao, ("variously "plaintiff" and "Ms. Chao", of 2 Franco Terrace, Pittsfield, MA 01201, Berkshire County, Massachusetts and at all times relevant was an inmate at the South Middlesex Correctional Center.

2. Defendant Moises Ballista ("Ballista") was at all times relevant hereto a Correctional Officer stationed at the South Middlesex Correctional Center, and an employee of the Department of Correction.  Ballista has been relieved of his position of Correctional Officer and pleaded guilty to criminal charges deriving from the subject incidents, is being sued in his individual capacity.

3. Defendant Department of Correction ("DOC") is an agency of the government of the Commonwealth of Massachusetts within the Executive Office of Public Safety and Security (EOPSS) responsible for the operation and maintenance of correctional facilities, including the South Middlesex Correctional Facility, and for the care, protection, safety and well-being of all inmates incarcerated therein. Defendant Kathleen Dennehey ("Dennehey") was at all times relevant the

Commissioner of the Massachusetts Department of Correction. Commissioner Dennehey is sued in her individual capacity.

4. Defendant Kelley Ryan ("Superintendent Ryan") is an employee of the Commonwealth of Massachusetts and was at all times relevant the Superintendent of the South Middlesex Correctional Center. As such Ryan was responsible for the training, acts and conduct of employees there, including defendant Ballista, as well as for the care, protection, safety and well being of the inmates there, including Chao. Superintendent Ryan knew or should have known of the violations and failed to act to prevent them, and maintained flawed policies and procedures that resulted in a culture of ignoring the presence of sexual relations between guards and inmates. Ryan is being sued in her individual capacity.

5. Defendant Randy Azzato ("Azzato") is an employee of the Commonwealth of Massachusetts and was at all times relevant an assistant within the Security Department of the South Middlesex Correctional Center. As such he was responsible for the training, acts and conduct of employees there, including defendant Ballista, as well as for the care, protection, safety and well-being of the inmates there, including plaintiff Chao. Azzato likely knew or should have know of the violations and failed to act to prevent them. Azzato knew or should have known of the violations and failed to act to prevent them, and maintained flawed policies and procedures that resulted in a culture of ignoring the presence of sexual relations between guards and inmates. Azzato is being sued in his individual capacity.

6. Defendant Chris Tortora ("Tortora") is an employee of the Commonwealth of Massachusetts and was at all times relevant the Security Officer of the South

Middlesex Correctional Facility.  As such he was responsible for the training, acts and conduct of employees there, including defendant Ballista, as well as for the care, protection, safety and well-being of the inmates there, including plaintiff Chao.  Tortora knew of the violations and failed to act to prevent them. Superintendent Ryan knew or should have known of the violations and failed to act to prevent them, and maintained flawed policies and procedures that resulted in a culture of ignoring the presence of sexual relations between guards and inmates.  Officer Tortora is being sued in his individual capacity.

## FACTS

7. In 2003, the plaintiff was a female inmate housed in the South Middlesex Correctional Center located in Framingham, Massachusetts.

8. In and about that same time, defendant Ballista was a correctional Officer charged, *inter alia*, with the care, protection, safety and well being of the inmates housed at the South Middlesex Correctional Facility.

9. In or about June of 2003, defendant Ballista initiated sexual conduct with the plaintiff, including intercourse.  The sexual contact was non-consensual and consisted of approximately fifty to a hundred encounters of oral, vaginal and anal sex.  The incidents were subject to a Department of Internal Affairs investigation lasting from 2003 until at east through September, 2004.

10. The non-consensual sexual encounters continued from the summer of 2003 until on or about September 2004, at which time Ballista was dismissed from his position as a Correctional officer.

11. Ballista was suspended from his position and was eventually indicted by a Middlesex County grand jury.  He ultimately pleaded guilty to multiple counts of

sexual relations with an inmate. He served a term of months in prison and has been released pending a period of probation.

12. Defendant Ballista initiated sexual encounters with Chao at least once or twice a week until on or about he was dismissed from the facility following an Internal Affairs (Internal Protection Service) investigation.

13. Ballista would play favorites in the facility, giving the girls that he liked more benefits, and was alleged to have sex with other inmates, which other prison officials knew or became aware of during the time relevant to this complaint.

14. Ballista would use his radio as a tool to signal Chao when he was moving through the facility after and before our sexual encounters. This was the type of radio that the other corrections offers carried and used to communicate between them.

15. It is believed that other officers, whose names are not known at this point, knew or should have known that Ballista was using his radio in this way, as a tool to facilitate his illegal behavior, yet they did and/or said nothing.

16. Ballista had sexual relationships with at least one other inmate.

17. Ballista was prosecuted for his crimes, pleaded guilty, and received a jail term for his sexual crimes.

18. When rumors surfaced of the sexual relationship, which were known to prison officials, Ballista was not disciplined. Rather he was removed to the central control room, which is commonly known to the inmates as the "Bubble."

19. With me, at least one sexual encounter with Ballista took place near and/or around the "Bubble".

20. Officers working in the "Bubble" can be placed there because of concern of sexual relations with inmates and to remove them from contact with the inmates.

21. The "Bubble" is an enclosed space with protective glass. The "Bubble" maintains at all times at least two corrections officers to operate the locked entrances and exits and camera security systems, among other systems.

22. Ballista left the "Bubble" while on duty despite the presence of other officers and had at least one sexual encounter with Chao in and or around the Visitor's Waiting room and bathroom.

23. The entrance to the Visitor's Waiting Room and bathroom is fully visible to other officers stationed in the "Bubble."

24. The other officers who were stationed in the "Bubble" when Ballista left his post to have a sexual encounter with Chao, whose names are not yet known, knew or should have known, saw or should have seen, or at least were in the position to see Ballista leave his station to engage in a sexual encounter with me.

25. Despite being posted to the "Bubble", Ballista was allowed by other officers to conduct rounds during and/or at which times sexual encounters with Chao occurred.

26. At least one of the sexual encounters with Ballista took place in the Administration hall or area of the facility.

27. The Administration hall or area is strictly off-limits to any inmate.

28. The entrance to the Administration hall or area is in close proximity to and is visible from the control room area or "Bubble".

29. The officers stationed in the "Bubble" knew or should have known, saw or should have seen, or at least were in the position to see Ballista leave his station from the central control room to engage in a sexual encounter with Chao in the Administration Hall.

30. On at least one occasion, a sexual encounter occurred in the "trailers", used for visits between mothers and their children.

31. On one occasion, another corrections officer whose name is not yet known saw Ballista and Chao together leaving the trailer following a sexual encounter. That officer was escorting the other inmate to the trailer.

32. The other officer saw Chao with Ballista after the rumors of our sexual relationship had already been circulated.

33. This other officer who was escorting the other inmate to the trailer knew or should have known that Ballista should not have been around Chao because of the rumors of our sexual relationship.

34. The other officer and officers knew or should have known that Ballista was having a sexual relationship with Chao.

35. During the relationship with Ballista, Chao feared that if she stopped the sexual relationship she would be punished, either by Ballista or others, and sent back to the main prison facility.

36. Ballista and Chao discussed these fears. He was aware of Chao's fears.

37. Subject to Ballista's control, and the control of the SMCC, Chao feared she would lose the privileges of the Pre-Release facility and sent back to the much harsher main facility in Framingham which is a medium and maximum security facility.

38. Chao reasonably feared having to serve time in the "hole" of the facility, where a prisoner is locked down almost most of the day and not allowed out.

39. Chao reasonably feared she would lose the right of visitations from my children.

40. Chao reasonably feared losing the privileges of the minimum security pre-release facility, including but not limited to the absence of locked doors, fences, access to

a yard, having a bathroom in a different room other than her cell, the permission to carry money for buying items from vending machines, the ability to carry fruit from the mess hall to her room, the more gentle correctional officers (they are more verbally and physically abusive in the main facility), the far less dangerous prisoner population, fewer lock-downs, better food and the ability to wear clothes such as jeans.

41. During the internal investigation (IPS) of this matter, Carl Spencer, an employee of the facility, interviewed Chao.

42. During this interview, Chao denied having a sexual relationship with Ballista.

43. During the interview Spencer threatened her leading Chao to believe she would be "shipped out" if the sexual relationship were known.

44. In this interview, Carl Spencer told Chao that he did not want to hear her say later that she had, in fact had a sexual relationship with Ballista.  Spencer told Chao she "should take this to the grave."

45. Despite the assurance that Chao would not be punished if she admitted to the sexual relationship, it was common knowledge to the other inmates at the time that if Chao had filed a grievance she would have been transferred out of pre-release and back to the medium-maximum main facility prior to the completion of any investigation to test the truth of the allegations.

46. At all times relevant, Spencer was the Director of Security for the SMCC.  He made statements and took actions that were outside his scope of authority and violated clearly established law.

47. As one example, in and/or about the investigation of Ballista, Spencer told Chao that he did not want to hear her say later that she had, in fact, had a sexual

relationship with Ballista and that (in Spencer's words") Chao "should take this to the grave."

48. These and other statements and actions made by Spencer threatened Chao, were made with insidious motive, implied that she would be the subject of retaliation, that she would be punished if she reported Ballista and the sexual relations she knew about, including but not limited to being removed from the facility, denied visitation from her children, and denied other general rights as a an inmate.

49. These and other statements and actions by Spencer were made outside the scope of his discretionary authority, were made in bad faith, and violated Chao's Constitutional rights and clearly established law.

50. Chao believes the experience of Christine McNamara, an inmate who was transferred out the facility, is an example of this type of punishment.

51. According to internal documents and reports signed by Defendant Ryan, the Superintendent at South Middlesex Correction Center (Ryan), discovered since the initial filing of this case, this practice and policy was routinely carried out as shown by "Inmate _____ (redacted) has been returned to MCI Framingham *pending* investigation." (Italics for emphasis).

52. The only time Chao felt she would not be punished is when Internal Affairs interviewed her by an individual whose name is not yet known who worked outside the facility.

53. From March 25 until July 29, 2004, Chao was not interviewed by any other member of the Internal Protection service (IPS).

54. During the time period between March 25 and July 29, 2004, defendant Ballista did and was able to initiate other sexual encounters with Chao within the facility.

55. The administration of the facility had plenty of information, knew or should have known Ballista was sexually engaged with Chao and other inmates.

56. The administration maintained policies and procedures which resulted in a culture within the SMCC that tolerated, looked the other way in the face of, facilitated, and/or enabled sexual activity between guards and inmates, such as Ballista with Chao and at least one other prisoner.

57. During her sexual relationship with Ballista, around the time rumors had surfaced of our sexual relationship, Chao was placed on Oral Contraceptive Pills (OCP) by the facility's nursing staff.

58. Chao believes that through conversation with these nurses they knew, or should have known, that the sexual relationship was on going.

59. Even after the rumors had been spread that Chao and Ballista were having a sexual relationship, and after Chao's interviews with IPS, Ballista was allowed to take the "third" shift – 11pm to 7am.

60. The "third" shift allowed Ballista easier access to Chao's room at night when the facility is quiet and there are fewer people around than during the day.

61. The Administration of the facility knew or should have known that Ballista had better access to her room at night on the "third" shift, thus putting him in the position to have easier access to Chao, enabling his sexual relationship with her, maintaining policies which created a culture within the facility of looking the other way.

62. After or about the time that rumors surfaced of a sexual relationship between Ballista and Chao, she was transferred from the 2nd to the 3rd Floor of the facility.

63. At that time, Ballista was regularly posted on the 3rd floor. This enabled Ballista to have easier access to sexual contact with her.

64. This transfer enabled the sexual encounters between Chao and Ballista. The Administration of the facility knew or should have known that Ballista had better access to her room when she was transferred from the 2nd to the 3rd floor, enabling Ballista's sexual relationship with her, maintaining policies that created a culture within the facility of looking the other way.

65. One of the sexual encounters took place in the Horticultural Classroom on the first floor. This classroom is located across from the Staff Locker Room.

66. At one point, Ballista admitted to Chao that he was afraid of her "getting shipped" because she was having sex with him.

67. At one point, Ballista became jealous. He asked Chao directly if men or other officers tried to "get with" her.

68. Upon my release, Chao sought out therapy as a result of my multiple and confusing feelings concerning my relationship with Ballista.

## CAUSES OF ACTION

## COUNT I

### Assault and Battery – Against Ballista

69. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 68 hereof, as if fully set forth herein.

70. While the plaintiff was in his custody, care and control, defendant Ballista assaulted and battered the plaintiff against her will and without her consent in a sexual manner thereby inflicting rape on the plaintiff and causing her damages.

71. As a direct and proximate result of defendant Ballista's aforesaid acts and conduct and the injuries resulting there from, Chao sustained physical injury and mental pain and suffering.

## COUNT II

### Negligence – Against Ballista and Spencer

72. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 71 hereof, as if fully set forth herein.

73. Ballista and Spencer owed a duty to Chao to exercise reasonable care in holding, incarcerating and guarding her, which duty was breached by each of the defendants, thereby directly causing the plaintiff loss and damage, including physical injury and mental pain.

74. As a direct and proximate result of the negligence of the defendants, and the injuries the plaintiff sustained, the plaintiff is entitled to damages.

## COUNT III

### Wanton and Reckless Conduct – Against Ballista and Spencer

75. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 74 hereof, as is fully set forth herein.

76. While holding the plaintiffs in their custody and control, while acting outside the scope of their employment, the defendants engaged in wanton, reckless and negligent conduct thereby inflicting pain and physical harm upon the plaintiff.

77. The aforesaid alleged facts and conduct of the defendants were intentional, knowing, willful and purposeful and have caused the plaintiff harm.

## COUNTY IV

### Negligent or Intentional Infliction of Emotional Distress – Against all defendants

78. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 77 hereof, as if fully set forth herein.

79. The aforesaid alleged conduct of the individual defendants was made outside the scope of their employment, negligently or with malice, intentional, knowing, willful and/or purposeful and/or was outrageous beyond all bounds of human decency which a civilized society should tolerate, and the defendants knew or should have known that their said conduct would inflict severe emotional distress upon the plaintiff.

80. Plaintiff has suffered physical, mental, and emotional distress, including pain and suffering, and other damages as a result of the aforesaid alleged acts and conduct of the individual defendants.

## COUNT V

### 42 U.S.C. sec. 1983 Claim Against Each Defendant as Violation of Constitutional Rights

81. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 80 hereof, as if fully set forth herein.

82. By Ballista's acts of having sexual encounters with the plaintiff repeatedly from June 2003 until in or about September 2004 until he was removed from the facility, by Spencer's direct actions and threats made against Chao during the investigation, by failing to act to prevent the sexual batteries, with the information known at that time as the case may be, the defendants *inter alia* deprived Chao of her right to be free in her person, her right to due process under the law, the right

to be free from unreasonable search and seizure and various other rights guaranteed her under the United States Constitution and the Massachusetts Declaration of Rights.

83. While the plaintiff was in the custody and control of the Massachusetts Department of Correction, the defendants inflicted mental pain and physical injury upon the plaintiff, caused her to suffer cruel and unusual punishment, denied her right to be free from unreasonable search and seizure, denied her due process, denied her medical attention and denied her other rights and privileges, all of which was in violation of her rights as guaranteed under the United States Constitution and the Massachusetts Declaration of Rights.

84. The defendants have engaged in conduct that shocks the conscience and failed to act to protect Chao. As a direct and proximate result of the aforesaid alleged acts and conduct and the injuries she sustained there from, the plaintiff has been caused great pain and suffering and is entitled to damages.

## COUNT VI

### M. G. L. , c.12 § 11H and 11I Claim Against Each Defendant As Violation of Civil Rights By Threats, Intimidation or Coercion

85. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 84 hereof, as if fully set forth herein.

86. Given that Chao was an inmate in the custody and control of defendant Ballista and that her safety and well-being was subject to his power and dominance over her person, she was unable to reasonably resist and oppose his sexual assault and battery of her body, which said improper acts and conduct by him was achieved through intimidation, threat dond coercion, all of which violated the plaintiff's civil

rights as guaranteed by the Due Process Clause of United States Constitution and the Massachusetts Declaration of Civil Rights.

87. Said alleged conduct by defendant Ballista constitutes a violation of Chao's civil rights by threats, intimidation or coercion, a violation of the Due Process Clause, right against unreasonable search and seizure as guaranteed by the United States Constitution and the Massachusetts Declaration of Civil Rights.

88. Given that Chao was an inmate in the custody and control of the defendant Spencer and that her safety and well—being was subject to his power and dominance over her person, she was unable to reasonably reside and oppose the improper intimidation, threat and coercion, all of which failed to protect her and violated the plaintiff's civil rights, including but not limited to the Due Process Clause, as guaranteed by the United States Constitution and the Massachusetts Declaration of Civil Rights.

89. The defendants have engaged in conduct that shocks the conscience, and failed to act to protect Chao. As a direct and proximate result of these defendants aforesaid acts, statements and conduct, the plaintiff was caused emotional distress and physical harm and is entitled to damages.

WHEREFORE, plaintiff CRISTINA CHAO prays as follows:

A. That the Court enter judgment in her favor and against defendants on all Counts of the Complaint;

B. That the Court award to her and against defendants compensatory damages, jointly and severally, in an amount to be determined at trial;

C. That the Court award to her and against defendants punitive damages, jointly and severally, in an amount to be determined at trial, in order that such award will deter similar proscribed conduct by defendants in the future;

D. That the Court award to her and against defendants pre-judgment and post-judgment interest on all sums award to her in this action and that it further award to her recovery of her costs concerning this action, including reasonable attorneys' fees pursuant to 42 U.S.C. sec. 1983; and

E. That the Court grants her any other such relief to which she may be entitled and relief as justice may require.

## CONCLUSION

WHEREFOR, plaintiff CRISTINA CHAO demands judgment in an amount as this Court shall deem fair and just, plus such costs, attorney's fees and interest as the plaintiff is entitled to recover.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

Respectfully Submitted
CRISTINA CHAO
By her attorney,

/s/ Benjamin Weisbuch, Esq.
Benjamin Weisbuch, Esq.
BBO#649510
358 Watertown St.
Newton, MA  02458

Date: July 13, 2009

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and a paper copy will be sent to those indicated as non-registered participants on July 13, 2009.

/s/Benjamin Weisbuch
_____
Benjamin Weisbuch, Esq.
Counsel for the Plaintiff