UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| CRISTINA CHAO, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>MOISES BALLISTA, )<br>KATHLEEN M. DENNEHEY, Commissioner of )<br>the Massachusetts Department of Correction, )<br>KELLY RYAN, Superintendent South )<br>Middlesex Correctional Facility, et al., )<br>    Defendants. ) | Civil Action No. 07cv10934-NG |

GERTNER, D.J.:

### MEMORANDUM AND ORDER RE: ATTORNEYS' FEES AND COSTS
August 18, 2011

## I.     INTRODUCTION

Plaintiff seeks an award of attorneys' fees and costs following this Court's judgment against the defendants, Moises Ballista ("Ballista") and Kelly Ryan ("Ryan"), for violations of the plaintiff's federal and state constitutional rights. Cristina Chao ("Chao") brought an action under 42 U.S.C. § 1983 against Ballista and officials from the Department of Correction ("DOC") for damages resulting from sexual misconduct that occurred during a year-long period while Chao was incarcerated at South Middlesex Correctional Center ("SMCC") in Framingham, Massachusetts. The jury ultimately awarded $67,500.00 in damages, joint and severally against Ryan and Ballista, as well as $6,200.00 in punitive damages against Ballista alone. Since the

plaintiff was the prevailing party, she now moves for attorneys' fees for time spent on the case and allowable costs, pursuant to 42 U.S.C. § 1988(b).[1]

## II. BACKGROUND

Plaintiff Chao is a former inmate at Southern Middlesex Correctional Center ("SMCC") who was sentenced to four to five years in custody in 2003 for drug trafficking, after dealing drugs at the behest of a former boyfriend. Over the course of more than one year, Cristina Chao ("Chao") and a prison guard, Moises Ballista ("Ballista"), had fifty to one hundred sexual encounters in twenty-three places within SMCC. In spite of eye-witness reports from other inmates that at least two guards were engaging in sexual misconduct with inmates as early as May 2003, no efforts were taken to stop the misconduct until July 2004. According to three former inmates and two guards who testified at trial, such conduct was not unusual in the prison's highly sexually-charged environment. Ballista was suspended, and later convicted of sexual relations with an inmate, a crime against public justice in violation of Mass. Gen. Laws ch. 268 § 21A. Surveillance cameras were installed after the fact.[2]

On May 14, 2007, Chao filed a complaint against Ballista and Ryan, as well as Commissioner of Correction Kathleen M. Dennehey ("Dennehey"), Director of Security Randy Azzato ("Azzato"), and Officer Chris Tortora ("Tortora"), seeking to recover damages under 42 U.S.C. § 1983 for failing to protect her from sexual abuse.

---

[1] While the plaintiffs cited to the Equal Access to Justice Act ("EAJA"), that citation is clearly wrong. 28 U.S.C. § 2412(d). The EAJA deals only with cases against the federal government or its agencies.

[2] For a more detailed account of the facts of this case, see Chao v. Ballista, -- F. Supp. 2d --, 2011 WL 3204691 (D. Mass. July 28, 2011).

In the trial that ensued, the jury found that Ballista intentionally inflicted emotional distress upon Chao; that he violated her right to be free from cruel and unusual punishment by means of threats, intimidation, or coercion, as protected by the Massachusetts Civil Rights Act; that he violated her Eighth Amendment right to be free from cruel and unusual punishment; and that Ballista's conduct was intentional, willful, wanton, or malicious. In regard to other SMCC officials named in the case, the jury found that Ryan violated Chao's Eighth Amendment rights, but concluded that it was not intentional, willful, wanton, or malicious. The jury found that Dennehey did not violate Chao's Eighth Amendment rights.[3]

The jury awarded Chao a sum of $67,500 in damages against Ballista and Ryan, plus $6,200 in punitive damages against Ballista. See Verdict Slip at 2-3 (document #170). In the wake of this judgment, plaintiff filed a petition for attorneys' fees and costs on May 6, 2011. Plaintiff asks that the Court award $378,793.75 for attorneys' fees and $24,406.44 for costs against defendants, requesting a total sum of $405,640.19. See Pl. Pet. Attorneys' Fees (document #182) [hereinafter Pl. Pet.]; Pl.'s Supplemental Mot. Attorneys' Fees (document #198).

As I explain below, for reasons that are unique to this counsel and this case, I will not award the full amount requested.

## III. DISCUSSION

The Court has discretion to award reasonable attorney's fees in a civil rights case. Lewis v. Kendrick, 944 F.2d 949, 954 (1st Cir. 1991). Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting

---

[3] The claims against Azzato were dismissed at summary judgment, see Chao v. Ballista, 772 F. Supp. 2d 337, 341 n.1 (D. Mass. 2011). The claims against Tortora were dismissed at the plaintiff's request during trial.

the appropriate hours expended and hourly rates"). The First Circuit uses the lodestar method to evaluate whether the requested fee is reasonable. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The Court calculates fees by multiplying the number of hours productively spent on litigation by a reasonable hourly rate, as determined by prevailing market rates in light of an attorney's skill and experience. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008). The product of these two factors is the lodestar fee, which is presumed to be reasonable. The Court has authority to reduce the number of hours of time "unreasonably, unnecessarily, or inefficiently devoted to the case," id. (citing Hensley, 461 U.S. at 434), and to enhance or reduce the total figure based on the results obtained by counsel and the labor actually required by the case, id.

In the present case, plaintiff requests $378,793.75 for attorneys' fees and $24,406.44 for costs. Plaintiff seeks to recover costs that resulted from expenses paid out-of-pocket during the course of the case, including the costs for depositions, sheriff and constable fees, photography, expert witness fees, private investigator, and court costs. Cassandra Pettway-Johnson Aff., May 6, 2011, Pl.'s Ex. 1 (document #182-1); Pl.'s Supplemental Mot. Attorneys' Fees.

**A.     Hourly Rates**

The reasonableness of attorney's fees is determined by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The plaintiff has calculated the sum of $378,793.75 based on the following rates for her attorneys and their associated staff: $395.00 per hour for Andrew Fischer ("Fischer"), the co-founder of Jason & Fischer Associates and Chao's lead trial attorney; $260.00 per hour for Andrew Brodie ("Brodie"), an associate

attorney at Jason & Fischer since 2004 who assisted Fischer with pre-trial and trial matters; $60.00 per hour for Miranda Abrams ("Abrams"), a career paralegal working for Fischer; $295.00 per hour for attorney Ben Weisbuch ("Weisbuch"), Chao's original attorney; $250.00 per hour for Ethan Jessup ("Jessup"), a legal consultant who acted as Weisbuch's co-counsel; and $300.00 per hour for the late George Garfinkle ("Garfinkle"), plaintiff's original trial attorney. Pl. Pet. at 5-6.

Fischer and Weisbuch submitted information regarding the standard billing rates for someone of their experience and skill levels. The affidavits, however, were general and with the sole exception of the affidavit of Robert Sinsheimer ("Sinsheimer"), entirely conclusory. In effect, the counsel who provided information said that they knew Mr. Fischer and Mr. Weisbuch, that they were experienced, and that the rates they were seeking, $395 and $295 per hour, were reasonable. Mr. Sinsheimer provided more detail. He compared the rate Fischer was seeking with his own rate award of $350, in a case before Judge Woodlock, and maintained that both he and Fischer deserved the $395. See Robert Sinsheimer Aff. at 3, April 27, 2011 (document #182-3).

The case law, however, does not support this request, particularly for this lawyer. Fischer cited a number of cases, none in which more than $350 had been awarded. Indeed, in opposition, defendant Ballista cites recent cases in this district where the court found that a rate of $350 was reasonable. See Def. Ballista's Opp'n to Pl. Pet. for Attorneys Fees and Costs (document #192) [hereinafter Ballista Opp'n]. In Tri-City Cmty. Action Program, Inc. v. City of Malden, for example, this Court surveyed the average rates of attorneys in the Boston

community and found that the "founding partner and head of litigation" of a law firm had a reasonable hourly rate of $350.00. 680 F. Supp. 2d 306, 315-16 (D. Mass. 2010).

With respect to Fischer's associate, Brodie did not submit an affidavit attesting to his level of experience and expertise, apart from the description in the motion itself. Only the affidavit of Robert Sinsheimer mentioned Brodie, and he stated that he "believe[s] in the abstract, generically that a rate of $265 which Fischer is requesting for an associate trial lawyer with five (5) years experience is objectively reasonable." Robert Sinsheimer Aff. at 3. Sinsheimer himself admitted, however, that he had no personal knowledge of Brodie or his work. Id. Again, in Tri-City Cmty. Action Program, the Court determined that a reasonable rate for an associate with Brodie's level of experience is between $175 and $225.00. 680 F. Supp. 2d at 315. I found an hourly rate of $275.00 to be reasonable for a nine-year associate, and $225.00 per hour appropriate for a second-year associate. Id. Another recent case concluded that an associate with five years of experience in the Boston area should reasonably bill at $175.00 per hour. Walsh v. Boston University, 661 F. Supp. 2d 91, 112 (D. Mass. 2009). None of these cases suggest that $260.00 is appropriate.

In any event, the customary rate of lawyers in private practice is a relevant, but not conclusive, factor. See Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983), *reversed and remanded on other grounds by* Ramos v. Lamm, 632 F. Supp. 376, 378 (D. Colo. 1986). The "quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." Id. I cannot say that counsel's performance (Mr. Fischer, Mr. Weisbuch, and Mr. Brodie) in this case reflected the level of experience that they assert. For example, on Mr. Weisbuch's watch: The case was initially dismissed on statute of limitations grounds. When

it was refiled, there were fundamental problems of pleading and procedure, leading to the granting of yet another motion to dismiss, with leave to amend.[4] By early 2009, a proper motion to amend had still not been filed.[5] On Mr. Fischer's watch: There were countless motions to continue the trial date, even after counsel had agreed to certain dates , and the Court had cleared her calendar.

---

[4] The order read:

> For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. In sum, all claims against Defendant Ballista remain; all claims against the SMCC Defendants and the MDOC are dismissed. If the Plaintiff seeks to hold the DOC Defendants liable in their individual capacities, a set of claims not addressed here, or if plaintiff can allege in good faith that the proper officer had actual notice of the impending claim she may file a Motion to Amend the Complaint by November 23, 2008. The Court will examine the merits of such an amendment as necessary.

Mem. & Order Re: Mot. Dismiss at 15, Oct. 24, 2008 (document #36).

[5] On February 28, 2009, the court made the following docket entry:

> In its October 24, 2008 Order, the Court invited the Plaintiff to file a Motion to Amend her Complaint to plead personal liability against the individual defendants. The Federal Rules of Civil Procedure require that such an amendment be made via a Motion to Amend, allowing the defendants an opportunity to oppose. See Fed. R. Civ. P. Rule 15. Plaintiff understood that; she had filed an earlier motion to amend. As a practical matter, however, the Court will use the upcoming Status Conference to inquire whether the Defendants intend to oppose the amendment. Notwithstanding any such opposition, the Court expects the parties to submit a Proposed Scheduling Order at the conference, so that the action may proceed without further delay by either side.

And there were motions which were baseless prior to trial[6] and during the trial.[7] The Court often did not find counsel's pleadings to be particularly helpful in resolving the issues in the case.

Under the circumstances, I find the rates requested for Fischer, Brodie, and Weisbuch to be entirely unsupported. I will adjust the sum of attorneys' fees to compensate Fischer for his services at a rate of $300.00 per hour, reduced from $395.00 and Weisbuch to $250 reduced from $295. I will adjust Brodie's hourly rate from $260.00 to $175.00 per hour. These rates are more reasonable for their level of skill and experience. Indeed, Judge Saris awarded the same for Fischer and Brodie in <u>Kennedy et al v. Town of Billerica, et al.</u>, No. 04-12357, Mem. & Order at 3-4, July 24, 2008 (document #363) (awarding $300 for Fischer and $175 for Brodie).

Let me be clear: I reduce the rates of counsel only because of the unique issues in this case. I have made different rulings in recent cases that did not reflect the problems of the case at bar. <u>See, e.g.</u>, <u>Drumgold v. Callahan</u>, No. 04cv11193.

---

[6] For example, the plaintiff moved to strike the defendant's statement of uncontested facts in part on the grounds that it characterized the evidence. On March 4, 2011, I denied the plaintiff's motion with the following endorsement:

> To the extent that the plaintiff is concerned about the defendant's characterization of the facts, the plaintiff should make her argument in her own Opposition and indeed to the jury at trial. I agree with counsel that he should not waste time before a fast approaching trial date. In fact, the four plus hours of his associate's time in preparing this motion was inefficient. Attorney's fees are DENIED.

[7] On March 31, 2011, I denied the plaintiff's motion in limine to exclude deposition transcripts of the plaintiff and defendant Ballista:

> Denied. The defendants complied with the rule by identifying transcript references in their pre-trial memo. Plaintiff's counsel's argument that was not sufficient because defendants did not physically provide a copy of the transcript as redacted is absurd.

### B.     Number of Hours[8]

Plaintiff claims that her attorneys devoted time to the present case in the following hourly amounts: 479.1 hours by Fischer; 189.75 hours by Brodie; 418.15 hours by Weisbuch; 11.3 hours by Garfinkle, before his passing; 43 hours by Jessup; and 45.34 by Abrams, Fischer's paralegal.

### 1.     George Garfinkle

In his billing statement, Weisbuch submitted a request for $3,390.00 compensation for 11.3 hours of work on behalf of George Garfinkle. Garfinkle died on August 27, 2007, one week after the defendants filed their Answer in this Court. Neither Weisbuch nor the Executor of Garfinkle's estate produced records of the work performed by Garfinkle; instead, Weisbuch used his recollection of Garfinkle's time contribution to the case to make this estimate. Benjamin Weisbuch Aff. at 16-18, April 13, 2011, Pl.'s Ex. 2 (document #182-2) ("In calculating these hours, I included Attorney Garfinkle's time for work that I personally interacted with him and can affirm to this Honorable Court. I did not include work that Mr. Garfinkle completed independently, for which paper notes cannot be obtained."). The task descriptions in Weisbuch's billing statement, however, raise serious concerns about the reliability of his account of Garfinkle's time. Most notably, he includes an entry for a conference with Garfinkle on December 6, 2007 -- months after Garfinkle's death. Weisbuch's Billing Stmt. at 7, Pl.'s Ex. 2

---

[8] Ballista argues that the hours billed should be separated by defendant because the case against Ballista was relatively simple. It did not require the same kind of discovery or briefing -- and thus attorney hours -- as the case against the supervisory officials. As I have discussed before, the defendants in a § 1983 case are jointly and severally liable for an indivisible harm. See, e.g., Chao v. Ballista, 2011 WL 3204691, at *16 n.6. It stands to reason that they are also jointly and severally liable for fees. Ballista has cited no case to suggest otherwise. And in fact, just as Ballista can argue that the case against him did not require the kind of discovery required in the case at large, so too could the supervisory officials argue that the case would not exist in the first instance if it were not for Ballista's misconduct.

(document #182-2). Because Garfinkle cannot meet the burden for the recovery of attorney's fees, I will not include the $3,390.00 sum requested on his behalf in assessing total attorneys' fees.

### 2. Ethan Jessup

Co-counsel Ethan Jessup claimed 43 hours of his time to the case, resulting in a total request of $10,750.00 in compensatory fees. Jessup cannot meet the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. He failed to submit a billing statement for his time, instead documenting his time entries on Weisbuch's billing statement, despite his lack of formal association with Weisbuch's practice. See Weisbuch Billing Stmt. Because Jessup submitted neither his own billing records to document his involvement in the case, nor an affidavit or similar record regarding his legal experience, I reject the plaintiff's $10,750.00 request for attorney's fees for Jessup's services.

### 3. Ben Weisbuch

Weisbuch transferred the case -- and the majority of legal tasks and duties involved -- to Fischer and Brodie during the summer of 2009. At the time the case was transferred, it had not gone beyond the complaint, a motion to dismiss which was granted, and an amended complaint which was then answered. As defendant Ballista highlights in his opposition to the plaintiff's petition, Weisbuch did not play a significant role in the discovery or trial phases of the case, despite requesting compensation for his involvement during both stages.

Fischer and Brodie both entered their first appearance in the present case on July 14, 2009, at which point Fischer took over as lead counsel on Chao's behalf. See Notices of

Appearance (documents #61, #62).  Weisbuch himself was not involved in any of the depositions, did not produce any documents in response to requests, nor assist in answering any interrogatories, and did not participate in responding to the defendants' motions for summary judgment.  His time entries from August 2009 through March 2011 -- when the trial took place -- predominantly document and request compensation for time spent reviewing the work of Fischer and Brodie and other tasks unnecessary to the litigation against Ballista.  For example, tasks described in his time entries include reviewing the terms of Ballista's plea and attending his criminal sentencing, Weisbuch Billing Stmt. 9/28/2006; consulting with Assistant District Attorney George Zachos, id. 3/28/2006, 4/7/2006; and speaking with Chao's parole officer, id. 12/26/2005, 6/6/2007.  Additionally, Weisbuch requests approximately $8,333.00 for his work during the trial, including five hours' worth of time for watching the first day of the trial on March 22, 2011.  Id. 3/22/2011.

The plaintiff already had two trial attorneys.  As with Fischer, the period of the litigation on Weisbuch's watch clearly does not reflect the experience or skill he claims.  In addition to reducing his fee to $250 per hour, I will adjust Weisbuch's sum downward by $21,475 to eliminate excessive compensation for tasks completed after he transferred the case and Fischer assumed the role of lead counsel.

    **C.    Other Reductions**

        **1.    Deductions from Fischer's Fees**

Fischer requested a sum of $189,225 for his work, calculated at a rate of $395 per hour.  The fee at his adjusted hourly rate of $300 is $143,730.  I subtracted $30,127.34 from this sum

due to problems in his billing statement, as explained below, resulting in a final award of $113,602.66 in attorney fees owed to Fischer.

### a. Billing for Transition from Weisbuch to Fischer

In his billing statement, Fischer includes nine entries which involved only the transition of the case as it passed from Weisbuch into his own hands. These entries, listed on 7/13/2009, 7/14/2009, 8/20/2009, 10/13/2009, 10/29/2009, 1/5/2010, 8/3/2010, and 8/4/2010, list tasks such as drafting a letter to counsel, reviewing the discovery of co-counsel, and simply meeting with Weisbuch. Jason & Fischer Billing Stmt., Cassandra Pettyway-Johnson Aff. (document # 182-1) [hereinafter Fischer Billing Stmt.]; Def. Ryan Opp'n to Pl.'s Pet., Ex. F-1 (document #193-4) [hereinafter Ryan Opp'n]. In total, I will deduct $3,648.61 from the total attorneys fees for billing for work involved in the transitional process that is insignificant and unnecessary to the litigation.

### b. Mixed Billing Entries: Core vs. Non-Core Work

It is reasonable to distinguish between "core" and "non-core" work. Connolly v. Harrelson, 33 F. Supp. 2d 92, 96 (D. Mass. 1999). Core work involves legal research and other substantive work; non-core work encompasses less demanding tasks, such as letter-writing, telephone calls, and other clerical duties. Id. Ordinarily, non-core work would be charged at a lesser rate. Id. Ryan has identified 52 entries in Fischer's billing statement which describe both core and non-core work. In each of these, a single entry includes some tasks that are non-professional and others that are professional, charging the same hourly rate for both rather than

separating them. Ryan Opp'n, Ex. F-4 (document #193-4). I will discount these entries by one third and deduct $15,167.72 for mixed core and non-core entries in his time record and bill.[9]

### c. Duplicative Billing

I have further reduced Fischer's total fees by $7,055.51 for entries in his billing statement that describe duplicative work or are otherwise incomprehensible. Such duplicative work includes a 10/13/2009 entry requesting $390 for reviewing discovery made by co-counsel. Fischer Billing Stmt. 10/13/2009; Ryan Opp'n, Ex. F-6 (document #193-4). Fitting the classification of incomprehensible is an entry on 3/6/2011 for "Trial-awaiting verdict" on a date which preceded the start of the trial by several weeks. Fischer Billing Stmt. 3/6/2011. Indeed, this entry reflects the lack of care with which Fischer approached this case.

### d. Billing for Motions for Extensions of Time

Fischer's billing statement features seven entries which assess a fee for his preparation of motions for extensions of time. I deny compensation for Fischer's time involved in fashioning and completing such motions, and therefore reduce his total fees by $1,590. Fischer Billing Stmt. 8/5/2010, 10/26/2010, 10/27/2010, 10/28/2010, 11/15/2010, 11/23/2010, 2/22/2011; Ryan Opp'n, Ex. F-11 (document #193-4).

### e. Third Amended Complaint

Fischer lists three entries involving work on Chao's Third Amended Complaint in his billing statement. The Third Amended Complaint had already been prepared by Weisbuch

---

[9] Some entries fit multiple categories. If I have applied a reduction to the total for an entry that also belongs to subsequent categories, I did not subtract the cost again. For example, here the fees requested for some of these entries (#11 from January 5, 2010 and #44 from August 4, 2010) have already been deducted from Fischer's total compensation. I subtracted the $130.00 from entry 11 and the $1,501.00 requested in entry 44 when deducting fees stemming from the transition from Weisbuch to Fischer, see Ryan Opp., Ex. F-1, infra § C(1)(a), from the total sum of attorneys fees. I do the same in subsequent categories, although for brevity's sake, I do not note each duplicate entry exhaustively.

before Fischer took over as lead counsel. These entries involved duplicative and unnecessary work, and therefore I will not award the $790, $260, and $1,501 recorded in entries on 7/13/2009 and 8/3/2010. Fischer Billing Stmt.[10]

### f. Travel Costs

There are six entries in Fischer's billing statement which charge his full professional rate for travel time. See Fischer Billing Stmt. 11/28/2010, 12/7/2010, 3/9/2011, 3/9/2011, 3/16/2011, 3/20/2011, 4/1/2011. At his adjusted rate of $300 per hour, these entries result in a total of $5,330 in requested compensation for travel. I will award Fischer only half of his full fee for travel time, and thus reduce his fee by $2,665.25.

## IV. CONCLUSION

Plaintiffs' Motion for Attorney Fees and Costs (document # 182) is **GRANTED IN PART** and **DENIED IN PART**. I hereby **AWARD** $232,592.33 in reasonable attorneys' fees and $24,743.94 ($24,406.44 plus $337.50) in costs, for a total of **TWO HUNDRED FIFTY-SEVEN THOUSAND, THREE HUNDRED THIRTY-SIX AND 27/100 ($257,336.27) DOLLARS**. Plaintiff's supplemental motion (document #198) is **GRANTED.**

The attorneys' fees shall be disbursed as follows:

|  |  |
|---|---:|
| Fischer: | $113,602.66 |
| Brodie: | $33,206.25 |
| Weisbuch: | $83,063.42 |
| Garfinkle: | 0.00 |
| Jessup: | 0.00 |
| Abrams: | $2,720.00 |

**SO ORDERED.**

Date: August 18, 2011            */s/ Nancy Gertner*
                                                           **NANCY GERTNER, U.S.D.J.**

---

[10] The fees for these three entries have already been subtracted from Fischer's total, as they were also listed as entries involved in the lawyer transition and/or were duplicative entries.

# APPENDIX A
## Fee Adjustment Summary Charts

### Plaintiffs' Initial Requested Fees

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Principle Lawyer Fischer | 479.1 | 395.00 | 189,244.50 |
| Associate Attorney Brodie | 189.75 | 260.00 | 49,335.00 |
| Attorney Ben Weisbuch | 418.15 | 295.00 | 123,354.25 |
| Principle Atty. Garfinkle | 11.3 | 300.00 | 3,390.00 |
| Co-counsel Ethan Jessup | 43.0 | 250.00 | 10,750.00 |
| Miranda Abrams, Paralegal | 45.34 | 60.00 | 2,720.00 |
| **TOTAL FEE:** | | | **$378,793.75** |

### Revised Total Fees By Attorney

| NAME | HOURS | RATE | Fee at Adjusted Rate | Additional Reductions | TOTAL |
|---|---|---|---|---|---|
| Principle Lawyer Fischer | 479.1 | 300.00 | $143,730.00 | -$30,127.34 | **$113,602.66** |
| Associate Attorney Brodie | 189.75 | 175.00 | $33,206.25 | 0.00 | **$33,206.25** |
| Attorney Ben Weisbuch | 418.15 | 250.00 | $104,537.00 | -$21,474.58 | **$83,062.42** |
| Principle Atty. Garfinkle | 0 | 300.00 | 0.00 | 0.00 | **$0.00** |
| Co-counsel Ethan Jessup | 0 | 250.00 | 0.00 | 0.00 | **$0.00** |
| Miranda Abrams, Paralegal | 45.34 | 60.00 | $2,720.00 | 0.00 | **$2,720.00** |
| **REVISED TOTAL FEE** | | | | | **$232,591.33** |

**Fee Adjustments: Fischer**

| DESCRIPTION | COSTS SUBTRACTED | REVISED TOTAL from **$143,730.00** |
|---|---|---|
| Fischer billing for transition to trial | -$3,648.61 | $140,081.39 |
| Fischer billing has mixes entries. Core and non-core, and professional and non-professional work are not separated in calculating hourly costs. | -$15,167.72 | $124,913.67 |
| Fischer duplicative billing | -$7,055.51 | $117,858.16 |
| Fischer motions for extensions of time. | -$1,590.00 | $116,268.16 |
| Fischer 3rd Amended Complaint | -$0.00 | $116,268.16 |
| Fischer travel; costs reduced by half | -$2,665.25 | $113,602.91 |
| | | **$113,602.91** |